# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEONARD H. AXELROD and VICKI AXELROD FEINSTEIN, individually and as Trustee for the Leonard H. Axelrod Family Insurance Trust 082604, *On Behalf of Themselves and All Others Similarly Situated*, <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, <br><br> Defendant. | <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> **Case No.** **1:19-cv-2170** |

Plaintiffs Leonard H. Axelrod and Vicki Axelrod Feinstein, (individually and as Trustee for the Leonard H. Axelrod Family Insurance Trust 082604 (the "Trust")), on behalf of themselves and all others similarly situated, for their Complaint against Defendant New York Life Insurance and Annuity Corporation ("NY Life" or "Defendant"), state as follows:

## NATURE OF THE ACTION

1.     In 2004, Plaintiff Leonard H. Axelrod purchased a universal life insurance policy (the "Policy")[1] to provide financial stability and security for his daughter, Plaintiff Vicki Axelrod Feinstein, and her family. Premiums were dutifully paid for nearly fifteen years. But now, NY Life, through an array of wrongful and illegal acts, has deprived Plaintiffs of the Policy, stripped them of the financial stability and security they believed it would provide, and left them with nothing. NY Life, without

---

[1] While it is clear, as set forth herein, that NY Life routinely issues the wrong policy form to insureds, the *only* policies that NY Life should have issued to Plaintiffs or class members are the forms approved by the relevant state insurance agencies.  In Plaintiffs' case, the operative and binding Policy is the form approved by the Connecticut Insurance Department.

notice or explanation, hiked up the premiums on the Policy to make it unaffordable—punitively so. When Plaintiffs requested a copy of the Policy and an explanation for the drastic premium increase, NY Life provided Plaintiffs with a form policy that had, in pertinent part, never been approved by the Connecticut Insurance Department (the "Illegal Form").  And then, when Plaintiffs could not afford the new, outrageous premium payments, NY Life caused the Policy to lapse and left Plaintiffs without any ability to recover their years of investment. NY Life's conduct breaches its agreements with Plaintiffs. It is unfair, deceptive, and wrong.

2.     This is a class action brought on behalf of Plaintiffs and similarly situated owners and purchasers of universal life ("UL") insurance policies issued by NY Life. Plaintiffs seek to represent classes of injured NY Life policyholders who have been forced to pay excessive and unlawful premiums and who were issued policies without non-forfeiture provisions in violation of state law.

3.     Universal life insurance policies ("UL policies") are memorialized on form policies that have been submitted for approval and notice to a state insurance agency.  Mr. Axelrod purchased the Policy after viewing a sales presentation from a NY Life agent, who persuaded Mr. Axelrod that the Policy would be a reliable source of financial security for his daughter and her family. The agent assured Mr. Axelrod that while the Policy's premiums might increase by a small amount over time, depending on interest rates, the increase would not be significant. NY Life did not provide Mr. Axelrod, or Ms. Feinstein, with any further information or details about the potential increases and did not provide an illustration showing how those premiums might increase, even though it assured the Connecticut Department of Insurance that it would, and despite the fact that Mr. Axelrod asked for one. The Trust is the owner of the Policy and Ms. Feinstein is the beneficiary and the Trustee.

4.     Unlike traditional life insurance policies, UL policies are comprised of both a death benefit (a cash payout upon the death of the beneficiary) and an accumulated cash value. Every month,

NY Life makes a monthly deduction from the accumulated value in the policy, comprised of a "cost of insurance" ("COI") charge, which is based on a COI rate that is set in advance. The monthly premium that a policyholder pays need only be sufficient to cover the monthly deduction and any excess of premium grows the cash value. The COI rates underpinning the COI charges are capped by a maximum rate for each policy year according to a table submitted with the form policy NY Life submits to the relevant state agency. In Connecticut, NY Life submitted a UL policy with a specific table showing the maximum COI charge in each year of the Policy.

5.      For thirteen years, premiums were dutifully paid on the Policy—approximately $23,000 per year, and totaling over $320,000 throughout the in-force period. But recently, NY Life informed Plaintiffs that the minimum premiums due have increased, to over $40,000. Upon learning of this unexpected increase, Plaintiffs requested an illustration showing future predicted premiums. These illustrations show that the premium is expected to go up again next year to over $90,000. If all of the premiums were paid until the termination of the Policy, the cost of the Policy would well exceed the $1 million death benefit.

6.      The illustrations recently provided by NY Life also show that the reason for the drastic increase in the required premiums is a sudden increase in the COI charges that NY Life intended to deduct from the policy each month over the life of the policy.

7.      Due to the unfair and unaffordable premium increases unilaterally imposed by NY Life, the Policy lapsed on January 19, 2019. After faithfully paying premiums for over a decade, Plaintiffs now have no cash value or life insurance remaining. NY Life has retained all of the benefits that were poured into the policy for the last fifteen years, and Plaintiffs are left with nothing.

8.      When Plaintiffs asked for a copy of their Policy, NY Life could not find it. Instead, NY Life provided a replacement UL policy. But the form UL policy provided by NY Life is *not* the UL policy form approved by the Connecticut Insurance Department (the "Legal Form"). Instead, NY

Life provided Plaintiffs a universal life insurance policy printed on a *different* form (*See* Ex. A, the "Illegal Form"), the relevant portions of which were never submitted to or approved by the Connecticut Insurance Department.

9. The Illegal Form unlawfully lacks adequate non-forfeiture protection for policyholders. As required under Connecticut law, the Legal Form that NY Life submitted to the Connecticut Insurance Department for approval contained a "Lifetime No Lapse Guarantee (NLG)" clause. The NLG clause allows policyholders to pay an alternative, lower premium payment to keep their UL policies in force.  But the Illegal Form provided by NY Life to Plaintiffs contains only a limited five-year lapse protection that had purported to expire for Plaintiffs.

10. Additionally, the Illegal Form contained a table of allowable COI rates that are significantly higher than the COI rates authorized under the Legal Form. NY Life illegally altered Plaintiffs' COI rate to provide a massive increase of the maximum allowable COI rate.

11. As a result of the Illegal Form, higher premiums were assessed to keep the Policy in force than were required under the Legal Form.

12. NY Life's conduct has rendered Plaintiffs' policies worthless. Its illegal and unfair rate hikes create what are known as "shock lapses"—a tactic that forces policy lapses by virtue of burdensome premium increases. Policyholders like Plaintiffs are unable to afford the new premiums imposed by NY Life, or the premiums are so expensive that they cannot reasonably be justified by the ultimate death benefit.

13. Making matters worse, NY Life's orchestrated efforts to force these policies into lapse is contrary to state laws prohibiting the sale of policies without specifically enumerated no-lapse benefits. Numerous states, including California, Texas, Florida and Connecticut, have laws imposing non-forfeiture requirements on life insurance policies so that, after years of paying premiums, the insured is not left completely empty-handed simply because a policy has become cost-prohibitive. NY

Life is supposed to sell policies with policy forms containing approved non-forfeiture protections, but it does not.

14.    NY Life's conduct towards Plaintiffs—failing to provide illustrations at the time of purchase, failing to provide the underlying policy form upon request, and providing Plaintiffs with an Illegal Form that provides inferior benefits to the Legal Form—is not an isolated incident. NY Life's behavior reflects a systemic pattern of misconduct by NY Life that has worsened, not improved, in recent years.

15.    In 2011, the New York Department of Financial Services ("NYDFS") issued a Report on Market Conduct Examination of NY Life (the "2011 Report") (Ex. B) which found that NY Life repeatedly violated the New York Insurance Law by using policy forms that were not approved and by routinely failing to provide an illustration to insurance applicants.  The 2011 Report identified that for 8% of the policies examined, NY Life had failed to provide the policyholder with any required illustration at all, and that for 34.8% of the policies that were issued other than as applied for, NY Life failed to provide the proper revised illustration.

16.    Five years later, in the next Report on Market Conduct Examination of NY Life (the "2016 Report") (Ex. C), NYDFS made clear that, rather than improving its compliance with the law, NY Life's noncompliance had actually gotten worse. NYDFS found that NY Life had violated the New York Insurance Law by using altered forms that had never been approved for use in New York State. And, alarmingly, the 2016 Report stated that NY Life's company policy is to *not* maintain copies of policies, and instead to re-create policy forms on an as-needed basis.  Because NY Life does not maintain copies of the policies it actually issues, when it later re-creates replacement policies, it routinely adds language to the replacement policies that was never included in an approved form— leading to violations of the New York Insurance Law. The 2016 Report also found that in an eye-popping 97.2% of the time, NY Life's agents failed to submit a signed illustration with the application,

and even confirmed that no illustration conforming to the policy issued was ever provided to the policyholder.

17.    As a result of NY Life's unlawful and unfair conduct, thousands of class members have paid exorbitant and unlawful charges. In many cases, NY Life unlawfully deprived class members of benefits in states requiring policies contain non-forfeiture protections. NY Life's conduct, as detailed below, is extraordinarily harmful and must be stopped.

18.    Therefore, Plaintiffs bring this action on their own behalf and on behalf of the class of NY Life policyholders who have been damaged by its illegal conduct.

## PARTIES

19.    Plaintiff Leonard H. Axelrod is a resident of Hamden, Connecticut. Mr. Axelrod is the insured under NY Life's UL policy number 62906601 and settlor of the Leonard H. Axelrod Family Insurance Trust 082604.

20.    Plaintiff Vicki Axelrod Feinstein, in her capacity as Trustee for the Leonard H. Axelrod Family Insurance Trust 082604, is trustee of the Leonard H. Axelrod Family Insurance Trust 082604, an irrevocable trust that holds a NY Life UL policy insuring the life of Mr. Leonard H. Axelrod, with the policy number 62906601. The Trust is located in the State of California, as is Plaintiff Feinstein.

21.    Defendant New York Life Insurance and Annuity Corporation is organized under the laws of Delaware with a principal place of business at 51 Madison Avenue, New York, New York 10010.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over the parties to this action pursuant to 28 U.S.C. § 1332(d) and 28 U.S.C. § 1332(a)(2) because this is a class action with diversity between at least one class member and one defendant, and the aggregate damages exceeds $5,000,000.

23.    This Court has general personal jurisdiction over NY Life because NY Life maintains its principal place of business in this District.

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because NY Life resides in this district.

## FACTS

**A.    NY Life's Universal Life Policies Contain Maximum COI Rates.**

25.    The Policy at issue in this case is a contract of adhesion. All of NY Life's UL policies are form policies and contracts of adhesion that contain the same or substantially similar terms regarding NY Life's ability to increase the COI rate, COI charge, and premium.

26.    Universal life policies combine aspects of term life insurance (life insurance policies that pay a benefit in the event of the death of the insured during a specific time period) with an interest-bearing account into which premium payments are made. As a result, policyholders may adjust allocations of their contributions between the "term life insurance" component of their policy and the savings or investment component of their policy.

27.    Each month on the "Monthly Deduction Day," NY Life makes a monthly deduction from the accumulated premiums paid by policyholders that includes the COI charge. Policyholders can adjust both the amount and frequency of their premium payments so long as the policy value is sufficient to cover the monthly deductions.

28.    Even small changes in the COI rate can produce a dramatic increase in the COI charge and, as a result, the dollar amount of the monthly deduction charged by NY Life. Consequently, the higher the COI rate, the greater the amount of the premiums required to maintain a positive policy value balance and avoid a lapse of the policy.

29.     Policies may only lapse when there is insufficient value in the policy to cover the monthly deduction. Policyholders have the right, under the policies, to pay only the minimum premiums necessary to keep the policy in force.

30.     NY Life determines the COI charge each month through a stated formula. The monthly COI charge is calculated by multiplying the "cost of insurance rate" by the per $1,000 of insurance death benefit and subtracting the total by the per $1,000 of cash value accumulated in the policy. The COI rate maximums are stated within the form approved by the applicable state insurance agency.

31.     Expressed as a formula, the COI equation for the Plaintiff's Policy is as follows:

$$COI\ Rate * \frac{(1000s\ of\ Death\ Benefit)}{1.00327373978} - (1000s\ of\ Cash\ Value)$$

Therefore, increasing the COI rate by any amount directly correlates to a higher monthly COI deduction.

**B.    NY Life's Ability to Raise the COI Rate is Restricted to Four Narrow Factors**

32.     NY Life's insurance policies limit NY Life's ability to increase COI rates. The Policy, and the policies owned by class members expressly limit the reasons that NY Life may increase the COI rates:

> Any change in the Cost of Insurance rate will be on a uniform basis for insureds of the same classification, such as attained age, gender and risk classification. Any change in these rates will be based on future expectations for items such as investment earning, mortality, persistency, and expenses.

33.     This provision restricts the circumstances under which NY Life may raise the COI rate and does not permit NY Life to increase COI rates for other purposes.

**C.    State Prohibitions on Forfeiture of Life Insurance Policies and Requirements for Approval of Policy Forms.**

34.    Numerous states, including California, Connecticut, Florida and Texas, have laws imposing non-forfeiture requirements on life insurance policies. Stated otherwise, these states require that life insurers include provisions in their contracts ensuring that a policy will not be completely forfeited if a minimum a premium is paid or there is sufficient cash value to cover the premium payment.

35.    The purpose of these statutes is to protect insureds and policy owners, so that, after years of paying premiums, they are not left completely empty-handed simply because a policy has become cost-prohibitive. For example, Connecticut General Statute §38a-439 provides that all life insurance policies sold in Connecticut must contain specific non-forfeiture clauses that provide a paid-up non-forfeiture benefit on plan stipulated in the policy. *See* Conn. Gen. Stat. §38a-439(a)(1)-(6). Other states, like California, Florida and Texas, have the same required non-forfeiture provisions. *See, e.g.,* Cal. Ins. Code § 10160; Fla. Stat. Ann. § 627.476; Tex. Ins. Code § 1105.004.

36.    Consistent with these and other requirements governing life insurance policies, many states require that life insurance companies file life insurance policy forms with state insurance departments for approval. For example, life insurance companies operating in Connecticut are required to file policy forms with the Connecticut Insurance Department.

**D.    Named Plaintiffs' Facts.**

37.    According to NY Life, on October 14, 2004, it issued Universal Life NYLIAC Protector policy number 6290660 with a face amount of $1,000,000 insuring the life of Leonard H. Axelrod, then 70, a non-smoking male, and designating the Trust as the owner and Ms. Feinstein as the beneficiary. The Policy was issued in the State of Connecticut.

38.     Mr. Axelrod decided to purchase the Policy to provide financial security for Plaintiff, his daughter, Ms. Feinstein, and her family.

39.     Prior to selecting the Policy, Mr. Axelrod viewed a sales presentation in Connecticut from a NY Life agent whose office was located in Connecticut. The agent assured Mr. Axelrod that while the premiums might increase by a small amount over time, any increase would be insignificant. The agent did not provide Mr. Axelrod with any illustration of the premiums or other information that would inform him of future premium increases.

**NY Life Dramatically Increases COI Premiums**.

40.     Between 2004 and 2017, annual premiums of approximately $23,788.32 were paid.

41.     In 2017, NY Life raised the total premium necessary to keep the policy in force to $29,532 annually, which was paid.

42.     Then, in 2018, NY Life raised the total annual premium again to $45,722.49. NY Life provided no warning or explanation for why the premium had suddenly nearly doubled.

43.     In November 2018, Plaintiffs requested an explanation for the premium increases from NY Life and sought an illustration for the Policy. Mr. Axelrod had two phone calls with another NY Life agent, Tim Owen, followed by a face-to-face meeting with Mr. Owen at Mr. Owen's Trumbull, Connecticut office.

44.     NY Life ultimately provided an illustration—a description of the policy that shows projected increases in COI and premiums:



**New York Life Insurance and Annuity Corporation**
**NYLIAC Protector Universal Life Insurance Inforce Illustration**

Basic Ledger Expense Summary for Leonard H Axelrod

| | | Non-Guaranteed Policy Charges** | | | | | Non-Guaranteed Current Charges / Interest** of 3.00% | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Year Age | Premium Outlay | Premium Expense Charge | Add'l Charges | Cost of Insurance | Cost of Additional Benefits | Sum of All Deductions | Cash Value | Cash Surrender Value | Death Benefit | Face Amount |
| 15  85 | 46,400 | 3,722 | 48 | 22,417 | 0 | 26,187 | 41,328 | 23,864 | 1,000,000 | 1,000,000 |
| 16  86 | 92,801 | 7,201 | 72 | 61,242 | 0 | 68,515 | 68,125 | 52,844 | 1,000,000 | 1,000,000 |
| 17  87 | 92,801 | 7,201 | 72 | 64,683 | 0 | 71,957 | 92,354 | 79,256 | 1,000,000 | 1,000,000 |
| 18  88 | 92,801 | 7,201 | 72 | 68,138 | 0 | 75,411 | 113,911 | 105,179 | 1,000,000 | 1,000,000 |
| 19  89 | 92,801 | 7,201 | 72 | 72,079 | 0 | 79,352 | 132,209 | 125,660 | 1,000,000 | 1,000,000 |
| 20  90 | 92,801 | 7,201 | 72 | 76,376 | 0 | 83,649 | 146,769 | 146,769 | 1,000,000 | 1,000,000 |
| 21  91 | 92,801 | 1,856 | 72 | 80,458 | 0 | 82,386 | 163,185 | 163,185 | 1,000,000 | 1,000,000 |
| 22  92 | 92,801 | 1,856 | 72 | 84,682 | 0 | 86,610 | 175,873 | 175,873 | 1,000,000 | 1,000,000 |
| 23  93 | 92,801 | 1,856 | 72 | 89,235 | 0 | 91,163 | 184,367 | 184,367 | 1,000,000 | 1,000,000 |
| 24  94 | 92,801 | 1,856 | 72 | 94,461 | 0 | 96,389 | 187,836 | 187,836 | 1,000,000 | 1,000,000 |
| 25  95 | 92,801 | 1,856 | 72 | 100,080 | 0 | 102,008 | 185,703 | 185,703 | 1,000,000 | 1,000,000 |
| 26  96 | 92,801 | 1,856 | 72 | 108,518 | 0 | 110,446 | 174,903 | 174,903 | 1,000,000 | 1,000,000 |
| 27  97 | 92,801 | 1,856 | 72 | 117,949 | 0 | 119,877 | 154,122 | 154,122 | 1,000,000 | 1,000,000 |
| 28  98 | 92,801 | 1,856 | 72 | 129,586 | 0 | 131,514 | 120,763 | 120,763 | 1,000,000 | 1,000,000 |
| 29  99 | 92,801 | 1,856 | 72 | 144,483 | 0 | 146,411 | 71,069 | 71,069 | 1,000,000 | 1,000,000 |
| 30  100 | 92,801 | 1,856 | 72 | 163,766 | 0 | 165,694 | 1 | 1 | 1,000,000 | 1,000,000 |

45.     The illustration shows that in the fifteenth year of the policy (2019), NY Life required a payment of $46,400 to keep the policy in force—an increase of over 100% from the previous fourteen years.

46.     Worse, beginning in the sixteenth year of the policy, NY Life required a payment of $92,801 to keep the policy in force—an increase of 297% over two years.

47.     The provided illustration did not disclose the existing and past COI charges prior to the fifteenth year of the policy.

48.     Until Mr. Axelrod asked for an illustration in 2018, NY Life did not disclose to Mr. Axelrod or to the Trust that it would be increasing the COI charges or premiums in this exponential manner, nor did it provide any explanation for the increases.

49.     These increases are unlawful because they are inconsistent with the non-forfeiture benefits stated in the form approved by the Connecticut Insurance Department.

50.     Additionally, these increases are unlawful because they are inconsistent with the maximum COI rates stated in the form approved by the Connecticut Insurance Department.

51.    NY Life never previously provided Ms. Feinstein or Mr. Axelrod with any illustrations showing the projected cost of premiums for the Policy.

52.    Plaintiffs could not reasonably be expected to pay an annual premium of over $90,000 for a policy with a death benefit of $1 million. This is particularly so given that the COI charges are intended to steadily increase over the next fifteen years, depleting the cash value accumulating in the Policy. As a result, Plaintiffs' investment in the Policy for the past fifteen years was rendered worthless.

53.    Indeed, as a result of the unfair and unaffordable premium increases unilaterally imposed by NY Life, the Policy lapsed on January 19, 2019. After faithfully paying premiums for over a decade, Plaintiffs now have no cash value or life insurance remaining. NY Life has retained all of the money poured into the Policy for the last fifteen years, and Mr. Axelrod and his family are left with nothing.

**NY Life Provided Mr. Axelrod with an Illegal Form that Contains An Unlawful Lapse Provision and Significantly Higher COI Rates.**

54.    Mr. Axelrod does not have the original policy documents issued in 2004 by NY Life.

55.    Upon Mr. Axelrod's request for the original policy, NY Life provided a policy "in place of a previously issued policy with the same policy number which was lost."

56.    But the form provided by NY Life is not the universal life insurance policy form approved by the State of Connecticut, the Legal Form. Instead, NY Life gave Mr. Axelrod a universal life insurance policy printed on a *different* Illegal Form, which was never submitted to or approved by the Connecticut Insurance Department. The Illegal Form is less valuable and provides worse protection than the Legal Form in multiple respects.

57.    The Illegal Form does not comply with Connecticut's requirement that life insurance policy forms must include non-forfeiture provisions.

58.    In accordance with Connecticut General Statute §38a-439, the Legal Form filed with the Connecticut Insurance Department includes a "Lifetime No Lapse Guarantee (NLG)" clause. *See* Ex. D, ¶¶ 5.1-5.9.

59.    But the Illegal Form does *not* contain a no-lapse provision. Instead, it contains only a limited five-year no-lapse guarantee. *See* Ex. A.

60.    A five-year no-lapse guarantee is of far lesser value to policy owners and insureds because it only provides protection for five years and does not confer any benefits after five years. So, if a policy lapses after that limited period of protection, under the Illegal Form, the insured and policy holder will be left with nothing despite years of paying premiums.

61.    Moreover, under the Legal Form, the Policy *should never have been allowed to lapse* without some form of restitution to Plaintiffs for the premiums paid over the years. By swapping in the Illegal Form, NY Life deprived Plaintiffs of non-forfeiture benefits.

62.    Also, the Illegal Form lists a Table of Guaranteed Maximum Monthly Cost of Insurance Rates as follows:

**POLICY NUMBER -- 62 906 601**                    **INSURED -- LEONARD H AXELROD**

TABLE OF GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES
(PER $1,000 OF NET AMOUNT AT RISK)


MALE


NON-SMOKER CLASSIFICATION

| POLICY YEAR | |
|---|---|
| 01 | 2.94000 |
| 02 | 3.31000 |
| 03 | 3.63000 |
| 04 | 4.06000 |
| 05 | 4.54000 |
| 06 | 5.06000 |
| 07 | 5.62000 |
| 08 | 6.21000 |
| 09 | 6.83000 |
| 10 | 7.50000 |
| 11 | 8.23000 |
| 12 | 9.05000 |
| 13 | 10.00000 |
| 14 | 11.07000 |
| 15 | 12.27000 |
| 16 | 13.56000 |
| 17 | 14.92000 |
| 18 | 16.34000 |
| 19 | 17.81000 |
| 20 | 19.33000 |
| 21 | 20.94000 |
| 22 | 22.67000 |
| 23 | 24.58000 |
| 24 | 26.76000 |
| 25 | 29.64000 |
| 26 | 33.93000 |
| 27 | 41.28000 |
| 28 | 56.04000 |
| 29 | 83.33000 |
| 30 | 83.33000 |


THESE MAXIMUMS MUST BE INCREASED BY ANY FLAT EXTRA CHARGES THAT MAY APPLY.




PAGE 2A        POLICY DATA        NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION
0450-2A

63.    The Table of Guaranteed Maximum Monthly Cost of Insurance Rates in the Legal

Form contains COI rates that are lower:

### TABLE OF GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES
### FOR BASE POLICY
### (PER $1,000 OF NET AMOUNT AT RISK)

The rates shown below are based on the 1980 CSO Nonsmoker Table of Mortality

| POLICY YEAR | | POLICY YEAR | |
|---|---|---|---|
| 1 | .14094 | 51 | 13.37460 |
| 2 | .14762 | 52 | 14.69860 |
| 3 | .15680 | 53 | 16.08129 |
| 4 | .16682 | 54 | 17.49682 |
| 5 | .17851 | 55 | 18.96601 |
| 6 | .19103 | 56 | 20.51212 |
| 7 | .20607 | 57 | 22.16549 |
| 8 | .22110 | 58 | 23.98724 |
| 9 | .23865 | 59 | 26.06643 |
| 10 | .25619 | 60 | 28.78427 |
| 11 | .27709 | 61 | 32.81758 |
| 12 | .29966 | 62 | 39.64294 |
| 13 | .32391 | 63 | 53.06605 |
| 14 | .34984 | 64 | 83.33333 |
| 15 | .37912 | 65 | 83.33333 |
| 16 | .41009 | | |
| 17 | .44693 | | |
| 18 | .48965 | | |
| 19 | .53742 | | |
| 20 | .59276 | | |
| 21 | .65401 | | |
| 22 | .72203 | | |
| 23 | .79429 | | |
| 24 | .87251 | | |
| 25 | .96090 | | |
| 26 | 1.05949 | | |
| 27 | 1.16916 | | |
| 28 | 1.29417 | | |
| 29 | 1.43714 | | |
| 30 | 1.59899 | | |
| 31 | 1.77812 | | |
| 32 | 1.97123 | | |
| 33 | 2.18097 | | |
| 34 | 2.40660 | | |
| 35 | 2.65338 | | |
| 36 | 2.93268 | | |
| 37 | 3.30181 | | |
| 38 | 3.61779 | | |
| 39 | 4.04199 | | |
| 40 | 4.52073 | | |
| 41 | 5.03724 | | |
| 42 | 5.59039 | | |
| 43 | 6.17549 | | |
| 44 | 6.78686 | | |
| 45 | 7.44038 | | |
| 46 | 8.16249 | | |
| 47 | 8.97320 | | |
| 48 | 9.89813 | | |
| 49 | 10.95204 | | |
| 50 | 12.11846 | | |

64.     The premiums set forth in the illustration provided by NY Life far exceed the premiums that would be allowed under the COI Rates included in the Legal Form, subject to the No-Lapse Guarantee.  This led to the shocking and unaffordable premiums that Plaintiffs would have been forced to pay to keep the Policy in force.

**NY Life's Systemic Behavior Has Been Condemned by the New York State Department of Financial Services**

65.     NY Life has a pattern of selling life insurance policies based on illegal and unapproved policy forms. The NYDFS 2011 Report highlights NY Life's "illegal use of life insurance policy forms that were never approved for use in New York State." *See* Ex. B at 2. According to the NYDFS, using the wrong policy forms violated Section 3201(b)(1) of the New York Insurance Law.

66.     The 2011 Report also found that NY Life repeatedly failed to provide an illustration to the applicant at the time of the insurance application.  According to the NYDFS, NY Life failed to provide an illustration to the applicant in 8% of newly issued policies—and, where the policy ultimately sold differed from an illustration initially provided to an applicant, NY Life failed to provide a revised illustration 34.8% of the time. Both of these failures are a violation of Section 53.3-5(a) of the New York Insurance Department Regulation No. 74.

67.     Five years later, the NYDFS issued its 2016 Report, demonstrating that NY Life's compliance with these policy issues has grown significantly worse over time.  NY Life's agents failed to provide applicants with a signed illustration a stunning 97.2% of the time.  When the NYDFS inquired further, NY Life's agents confirmed that no illustrations were ever provided in those cases.

68.     The 2016 Report also noted that NY Life altered at least *seven* of its previously approved policy forms by either adding or deleting terms in a manner inconsistent with the approved forms.  These alterations included changing the non-forfeiture language in these forms.  Shockingly, the NYDFS found that the *same* illegally altered form cited in the 2011 Report was *still* being used by NY Life in 2016.

69.     Alarmingly, the 2016 Report states that NY Life "does not maintain copies of policy contracts." Because of its failure to maintain policy contracts, NY Life's "practice is to re-create policy files on an as-needed basis." But NYDFS found that when NY Life re-creates a policy contract, NY Life routinely adds language to the policy that was never included in the approved form.

70.     Also, the 2016 Report found that NY Life violated Section 4221(a)(1) of the New York Insurance Law by failing to include a provision in its life insurance policy form that allows the policyholder a 60-day period, upon proper notice after a premium default, to elect a non-forfeiture benefit. The NYDFS found that NY Life violated Section 4221(a)(3) by failing to include a required provision in its approved form that requires a paid-up non-forfeiture benefit.

**E.     The COI and Premium Increases are Unlawful.**

71.     NY Life's increase of premium payments is unlawful because it exceeds the maximum rates contained in the policy forms NY Life submitted to state insurance agencies. However, even if NY Life was allowed to raise premium payments within an allowed range of maximum rates, it cannot do so unless such an increase is "based on future expectations for items such as investment earning, mortality, persistency, and expenses."

72.     Under the UL policies issued by NY Life, NY Life may only raise COI rates (up to the maximum rates in the Legal Form) based on expected *future* experience relating to the enumerated factors resulting from a deviation between actual and assumed experience using actuarially sound practices. NY Life may not increase COI rates when there is no reasonable expectation of a future adverse change in mortality, investment earning, persistency, or expenses.

73.     The sudden and dramatic increase of the premiums experience by Plaintiffs, which reflect huge increases to the COI charge, are not based on any reasonable expectation of future adverse change in mortality, investment earning, persistency, or expenses.

74.     There are no verifiable, material adverse changes to NY Life's investment income that would justify these dramatic increases. As a practical matter, the sensitivity of profits from investment income of the cash flows to NY Life generated by UL policies issued by NY Life is trivial when compared to the scale of COI increases that Plaintiff and the Class members are facing.

75.     There are no verifiable changes to the expectations for mortality risk sufficient to support a drastic increase in COI rates or premiums. To the contrary, in the face of years of improving mortality rates since the Policy was issued, NY Life has not reduced the COI charge or the premiums for the policy.  If anything, mortality factors are *improving*.

76.     In 2017, the SOA and the Academy revised its Mortality Table stating, "industry experience studies . . . have shown significant improvement in the mortality rates experienced by the industry from that underlying 2001 CSO table development." These improvements likewise represent a substantial financial benefit for NY Life.

77.     Additionally, the interrogatories filed by NY Life in 2016 and 2017 expressed no indication that changes to other anticipated experience factors, like persistency or expenses, would warrant a dramatic increase in the monthly deduction charge. Thus, if the increase in COI rates and premiums is purported to be based on those factors cannot be justified.

78.     Finally, changing investment income, mortality, persistency, and expenses could not possibly justify the massive increases to premiums. Insurance company actuaries are required to closely monitor and report on COI trends affecting non-guaranteed elements of their insurance policies. Material deviations between current and expected future expectations as to COI do not occur overnight; they are gradual trends for which actuaries can and do make incremental adjustments. As a consequence, it is inconceivable that the dramatic increase in premiums and monthly deduction charges Plaintiffs are facing are attributable to current or anticipated experience factors relating to the cost of providing insurance that emerged in a single year.

79.     NY Life has also concealed its wrongdoing. The monthly COI rates used to calculate COI charges are not disclosed to policyholders, nor has NY Life provided any rationale or supporting documents purporting to explain these drastic changes.

80.     The effect of these rate hikes create what are known as "shock lapses"—a tactic that forces policy lapses by virtue of burdensome premium increases. Policyholders like Plaintiffs are unable to afford the new premiums imposed by NY Life, or the premiums are so expensive that they cannot reasonably be justified by the ultimate death benefit. As a result, policyholders like Plaintiffs have no option but to sell, surrender, or otherwise cancel their policies. NY Life's conduct has rendered these policies worthless and punished policyholders, like Plaintiffs, who have dutifully paid premiums on their policies for many years.

81.     These effects are even worse where, as in Plaintiffs' case, NY Life has utilized illegal policy forms that do not comply with state anti-forfeiture requirements. NY Life has completely deprived those class members of the benefits that these state laws were specifically enacted to protect.

82.     NY Life's attempt to deprive Plaintiffs and the Class of the primary benefit of their policies—paid for by years of contributions to their policy values—violates NY Life's express and implied obligations under the policies, and amounts to unconscionable, unfair, and unlawful conduct.

## CLASS ACTION ALLEGATIONS

83.     This action is brought by Plaintiffs individually and on behalf of the following classes pursuant to Rules 23(b)(3) and 23(b)(2) of the Federal Rules of Civil Procedure:

**Nationwide Illegal Form Class:** All policyholders of New York Life Insurance and Annuity Corporation universal life insurance policies that paid premiums in excess of the amount permitted by the forms filed by NY Life with the applicable state insurance agency.

**Multi-State No Lapse Class:** All policyholders of New York Life Insurance and Annuity Corporation universal life insurance policies who purchased policies in states that required non-forfeiture provisions but were issued policies without the required non-forfeiture provisions.

**Nationwide Impermissible Rate Increase Class:** All policyholders of New York Life Insurance and Annuity Corporation universal life insurance policies that were subjected to a cost of insurance rate increase.

The foregoing classes exclude NY Life, its officers and directors, members of their immediate families, and their heirs, successors, or assigns.

84.    In the alternative, this action is brought by Plaintiffs individually and on behalf of the following sub-classes pursuant to Rules 23(b)(3) and 23(b)(2) of the Federal Rules of Civil Procedure:

**Connecticut Illegal Form Class:** All policyholders of New York Life Insurance and Annuity Corporation universal life insurance policies in Connecticut that paid premiums in excess of the amount permitted by the forms filed by NY Life with the Connecticut Insurance Department.

**Connecticut No Lapse Class:** All policyholders of New York Life Insurance and Annuity Corporation universal life insurance policies in Connecticut who were issued policies without no-lapse provisions.

**California Illegal Form Class:** All policyholders of New York Life Insurance and Annuity Corporation universal life insurance policies in California that paid premiums in excess of the amount permitted by the forms filed by NY Life with the California Insurance Department.

**California No Lapse Class:** All policyholders of New York Life Insurance and Annuity Corporation universal life insurance policies in California who were issued policies without no-lapse provisions.

The foregoing classes exclude NY Life, its officers and directors, members of their immediate families, and their heirs, successors, or assigns.

85.    The Classes and Subclasses each consist of hundreds of consumers of life insurance and thus are so numerous that joinder of all members is impracticable. The identities and addresses of class members can be readily ascertained from business records maintained by NY Life.

86.    The claims asserted by Plaintiffs are typical of the claims of the Class and Subclasses each seek to represent.

87.    Plaintiffs will fairly and adequately protect the interests of the Classes and Subclasses and do not have any interests antagonistic to those of other members of the Class and Subclasses.

88.    Plaintiffs have retained attorneys who are knowledgeable and experienced in class action and complex litigation.

89.    Plaintiffs request that the Court afford class members with notice and the right to opt out of any class certified in this action.

90.    This action is appropriate as a class action pursuant to Rule 23(b)(3) and Rule 23(b)(2) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the Class and Subclasses predominate over those questions affecting only individual members. Those common questions include:

a.    The construction and interpretation of the form insurance policies at issue in this litigation;

b.    Whether NY Life's actions to increase the COI charges on UL policies violated the terms of those policies;

c.    Whether NY Life breached its contracts with Class members;

d.    Whether Plaintiffs and the Class are entitled to recover damages as a result of the unlawful conduct by NY Life alleged herein and the methodology for calculating those damages;

e.    Whether NY Life acted with the bad faith and/or fraudulent intent of extracting more profit from UL policies than originally planned at the expense of policyholders, punishing policyholders who exercise their right to minimally fund their policies, and forcing policy lapses by virtue of premium increases (a tactic known as "shock lapses";

f.    Whether NY Life's conduct with respect to the COI increase applies generally to the class, such that injunctive relief is appropriate for the class as a whole;

g.    Whether NY Life illegally utilized unapproved life insurance policy forms;

h.  Whether NY Life unlawfully sold life insurance policies that did not include required non-forfeiture provisions; and

i.  Whether NY Life's conduct with respect to use of unapproved life insurance policy forms or life insurance policy forms that do not include required anti-forfeiture provisions applies generally to the Subclass.

91. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.  Due to the complexity of issues involved in this action and the expense of litigating the claims, few, if any, class members could afford to seek legal redress individually for the wrongs that NY Life committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

b.  When NY Life's liability has been adjudicated, claims of all class members can be determined by the Court;

c.  This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort, and expense and ensure uniformity of decisions;

d.  Without a class action, many class members would continue to suffer injury, and NY Life's violations of law will continue without redress while NY Life reaps and retains the substantial proceeds of its wrongful conduct; and

e.  This action does not present any undue difficulties that would impede its management by the Court as a class action.

## **FRAUDULENT CONCEALMENT**

92.  Plaintiffs did not discover and could not have discovered through the exercise of due diligence that the Trust was injured by the COI increase and premium increase until, at the very earliest, the May 2017 notice announcing a premium increase. Plaintiffs did not discover and could

not have discovered NY Life's use of an Illegal Form until the Illegal Form was provided in November

2018. Defendant's conduct as alleged herein constitutes a continuing violation of the law.

## COUNT I
### Breach of Contract and Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiffs and the Nationwide Illegal Form Class)

93.     Plaintiffs reallege and incorporate all allegations of this Complaint in paragraphs 1 to

92 as if fully set forth herein.

94.     The Policy and all policies held by Class members are binding and enforceable

contracts. NY Life entered into these contracts with Plaintiffs and the Class members. When Plaintiffs

and the Class members entered into their contracts with NY Life, they reasonably expected to receive

the benefits of a UL life insurance policy approved by the relevant state agency.

95.     Plaintiffs and the Class members performed all of their obligations under these

contracts.

96.     The UL policy forms utilized by NY Life are submitted for notice and approval to a

state insurance agency.  When Plaintiffs asked for a copy of their Policy, NY Life could not find it.

Instead, NY Life provided a replacement UL policy. But the form UL policy provided by NY Life is

*not* the UL policy form approved by the relevant state agency (the "Legal Form"). Instead, NY Life

provided a universal life insurance policy printed on a *different* form (the "Illegal Form"), the relevant

portions of which were never submitted to or approved by the state insurance agency.

97.     The Illegal Form provided by NY Life contains a table of allowable COI rates that are

significantly higher than the COI rates authorized under the Legal Form. As a result of the Illegal

Form, higher premiums were assessed to keep the Policy in force than were required under the Legal

Form.

98.     NY Life has a policy and practice of utilizing unapproved, illegal policy forms that are

not submitted to state insurance agencies for approval.

99.    NY Life charged Plaintiffs and the Class members higher premiums than allowed under the forms that were submitted to state insurance agencies.

100.    NY Life breached the express terms of its contracts with Plaintiffs and the Class members when charged premiums in excess of the amount permitted of the forms filed by NY Life with the applicable state insurance agency.

101.    Plaintiffs and the Class members were damaged when they paid premiums in excess permitted by the forms filed by NY Life with the applicable state insurance agency. As a direct and proximate result of NY Life's breach of these express agreements, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

102.    In addition to breaching the express terms of the contract it has with Plaintiffs and the Class members, NY Life has breached the covenant of good faith and fair dealing by using illegal and unapproved forms, and by charging premiums in excess of those allowed under the approved forms. To the extent that NY Life had discretion to increase the COI rate or the premiums due under UL policies, that discretion does not extend to imposing COI rates in excess of those allowed under the forms submitted for approval to state agencies. NY Life's conduct as described herein injured Plaintiffs' and the Class members' right to receive the benefits they reasonably expected to receive under their contracts. NY Life acted in bad faith when it assessed premiums in excess of those allowed by the forms approved by the relevant state agencies.

103.    NY Life's breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiffs and the Class members in an amount to be determined at trial.

104.    In addition to all damages allowed under law, Plaintiffs also seek reformation of the UL policy on behalf of themselves and the Class members to conform with the form policy that NY Life filed with the commissioner of the state insurance agency where the UL policy was offered to Class members.

## COUNT II
### Unjust Enrichment
### (On behalf of Plaintiffs and the Nationwide Illegal Form Class)

105.    Plaintiffs reallege and incorporate all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

106.    Alternatively, should Plaintiffs have no remedy in the existing UL contract, they bring this action for unjust enrichment.

107.    NY Life received a benefit from Plaintiffs through the premiums paid by Plaintiffs.

108.    NY Life unjustly received increased premiums from Plaintiffs because the increases of premiums collected were not made pursuant to a form of insurance contract submitted or approved by the commissioner of the Connecticut Department of Insurance.

109.    Instead of utilizing the form of UL insurance that NY Life filed with the commissioner of the Connecticut Department of Insurance, UL purported to use a form that unjustly allowed NY Life to collect higher premiums from Plaintiffs.

110.    As a direct result of NY Life's unlawful retention of Plaintiffs' and the Class's increased premium payments, Plaintiffs and the Class members have been harmed monetarily.

111.    Plaintiffs seek restitution of all amounts unlawfully retained by NY Life on behalf of themselves and the Class.

## COUNT III
### In the Alternative, Breach of Contract and Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiffs and the Connecticut Illegal Form Class)

112.    Plaintiffs reallege and incorporate all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

113.    The Policy and all policies held by Class members are binding and enforceable contracts. NY Life entered into these contracts with Plaintiffs and the Class members. When Plaintiffs

and the Class members entered into their contracts with NY Life, they reasonably expected to receive the benefits of a UL life insurance policy approved by the Connecticut Insurance Department.

114.    Plaintiffs and the Class members performed all of their obligations under these contracts.

115.    The UL policy forms utilized by NY Life are submitted for approval and notice to a state insurance agency. When Plaintiffs asked for a copy of their Policy, NY Life could not find it. Instead, NY Life provided a replacement UL policy. But the form UL policy provided by NY Life is *not* the UL policy form approved by the Connecticut Insurance Department (the "Legal Form"). Instead, NY Life provided a universal life insurance policy printed on a *different* form (the "Illegal Form"), the relevant portions of which were never submitted to or approved by the Connecticut Insurance Department.

116.    The Illegal Form provided by NY Life contains a table of allowable COI rates that are significantly higher than the COI rates authorized under the Legal Form. As a result of the Illegal Form, higher premiums were assessed to keep the Policy in force than were required under the Legal Form.

117.    NY Life has a policy and practice of utilizing unapproved, illegal policy forms that are not submitted to state insurance agencies for approval.

118.    NY Life charged Plaintiffs and the Class members higher premiums than allowed under the forms that were submitted to the Connecticut Insurance Department.

119.    NY Life breached the express terms of its contracts with Plaintiffs and the Class members when charged premiums in excess of the amount permitted of the forms filed by NY Life with the Connecticut Insurance Department.

120.    Plaintiffs and the Class members were damaged when they paid premiums in excess permitted by the forms filed by NY Life with the Connecticut Insurance Department. As a direct and

proximate result of NY Life's breach of these express agreements, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

121.    In addition to breaching the express terms of the contract it has with Plaintiffs and the Class members, NY Life has breached the covenant of good faith and fair dealing by using illegal and unapproved forms, and by charging premiums in excess of those allowed under the approved forms. To the extent that NY Life had discretion to increase the COI rate or the premiums due under UL policies, that discretion does not extend to imposing COI rates in excess of those allowed under the forms submitted for approval to the Connecticut Insurance Department. NY Life's conduct as described herein injured Plaintiffs' and the Class members' right to receive the benefits they reasonably expected to receive under their contracts. NY Life acted in bad faith when it assessed premiums in excess of those allowed by the forms approved by the Connecticut Insurance Department.

122.    NY Life's breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiffs and the Class members in an amount to be determined at trial.

123.    In addition to all damages allowed under law, Plaintiffs also seek reformation of the UL policy on behalf of themselves and the Class members to conform with the form policy that NY Life filed with the commissioner of the state insurance agency where the UL policy was offered to Class members.

## COUNT IV
### In the Alternative, Unjust Enrichment
### (On behalf of Plaintiffs and the Connecticut Illegal Form Class)

124.    Plaintiffs reallege and incorporate all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

125.    Alternatively, should Plaintiffs have no remedy in the existing UL contract, they bring this action for unjust enrichment.

126.    NY Life received a benefit from Plaintiffs through the premiums paid by Plaintiffs.

127.   NY Life unjustly received increased premiums from Plaintiffs because the increases of premiums collected were not made pursuant to a form of insurance contract submitted or approved by the commissioner of the Connecticut Department of Insurance.

128.   Instead of utilizing the form of UL insurance that NY Life filed with the commissioner of the Connecticut Department of Insurance, UL purported to use a form with much higher COI rates that unjustly allowed NY Life to collect higher premiums from Plaintiffs.

129.   As a direct result of NY Life's unlawful retention of Plaintiffs' and the Class's increased premium payments, Plaintiffs and the Class members have been harmed monetarily.

130.   Plaintiffs seek restitution of all amounts unlawfully retained by NY Life on behalf of themselves and the Class.

### COUNT V
**In the Alternative, Breach of Contract and Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiffs and the California Illegal Form Class)**

131.   Plaintiffs reallege and incorporates all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

132.   The Policy and all policies held by Class members are binding and enforceable contracts. NY Life entered into these contracts with Plaintiffs and the Class members. When Plaintiffs and the Class members entered into their contracts with NY Life, they reasonably expected to receive the benefits of a UL life insurance policy approved by the California Department of Insurance.

133.   Plaintiffs and the Class members performed all of their obligations under these contracts.

134.   The UL policy forms utilized by NY Life are submitted for approval and notice to a state insurance agency.  When Plaintiffs asked for a copy of their Policy, NY Life could not find it. Instead, NY Life provided a replacement UL policy. But the form UL policy provided by NY Life is

*not* the UL policy form approved by the California Department of Insurance. Instead, NY Life provided a universal life insurance policy printed on a *different* form (the "Illegal Form"), the relevant portions of which were never submitted to or approved by the state insurance agency.

135.    The Illegal Form provided by NY Life contains a table of allowable COI rates that are significantly higher than the COI rates authorized under the Legal Form. As a result of the Illegal Form, higher premiums were assessed to keep the Policy in force than were required under the Legal Form.

136.    NY Life has a policy and practice of utilizing unapproved, illegal policy forms that are not submitted to state insurance agencies for approval.

137.    NY Life charged Plaintiffs and the Class members higher premiums than allowed under the forms that were submitted to the California Department of Insurance.

138.    NY Life breached the express terms of its contracts with Plaintiffs and the Class members when charged premiums in excess of the amount permitted of the forms filed by NY Life with the California Department of Insurance.

139.    Plaintiffs and the Class members were damaged when they paid premiums in excess permitted by the forms filed by NY Life with the California Department of Insurance. As a direct and proximate result of NY Life's breach of these express agreements, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

140.    In addition to breaching the express terms of the contract it has with Plaintiffs and the Class members, NY Life has breached the covenant of good faith and fair dealing by using illegal and unapproved forms, and by charging premiums in excess of those allowed under the approved forms. To the extent that NY Life had discretion to increase the COI rate or the premiums due under UL policies, that discretion does not extend to imposing COI rates in excess of those allowed under the forms submitted for approval to the California Department of Insurance. NY Life's conduct as

described herein injured Plaintiffs' and the Class members' right to receive the benefits they reasonably expected to receive under their contracts. NY Life acted in bad faith when it assessed premiums in excess of those allowed by the forms approved by the relevant state agencies.

141.    NY Life's breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiffs and the Class members in an amount to be determined at trial.

142.    In addition to all damages allowed under law, Plaintiffs also seek reformation of the UL policy on behalf of themselves and the Class members to conform with the form policy that NY Life filed with the commissioner of the state insurance agency where the UL policy was offered to Class members.

## COUNT VI
### In the Alternative, Unjust Enrichment
### (On behalf of Plaintiffs and the California Illegal Form Class)

143.    Plaintiffs reallege and incorporate all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

144.    Alternatively, should Plaintiffs have no remedy in the existing UL contract, they bring this action for unjust enrichment.

145.    NY Life received a benefit from Plaintiffs through the premiums paid by Plaintiffs.

146.    NY Life unjustly received increased premiums from Plaintiffs because the increases of premiums collected were not made pursuant to a form of insurance contract submitted or approved by the commissioner of the California Department of Insurance.

147.    Instead of utilizing the form of UL insurance that NY Life filed with the commissioner of the California Department of Insurance, UL purported to use a form with much higher COI rates that unjustly allowed NY Life to collect higher premiums from Plaintiffs.

148.    As a direct result of NY Life's unlawful retention of Plaintiffs' and the Class's increased premium payments, Plaintiffs and the Class members have been harmed monetarily.

149.    Plaintiffs seek restitution of all amounts unlawfully retained by NY Life on behalf of themselves and the Class.

## COUNT VII
### Violations of Consumer Protection Statutes
### (On Behalf of the Multi-state No Lapse Class)

150.    Plaintiffs reallege and incorporates all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

151.    Plaintiffs bring this claim on behalf of the Multi-state No Lapse Class for violations of state consumer protection acts. Plaintiffs bring these statutory consumer protection claims pursuant to the substantially similar "Consumer Protection Acts" identified below, all of which were enacted and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices.

152.    The following consumer protection acts are collectively referred to herein as the "Consumer Protection Acts":

  a.  CAL. BUS. & PROF. CODE § 17200 et seq. and CAL. CIV. CODE § 1750 et seq. (California);

  b.  CONN. GEN. STAT. § 42-110a et seq. (Connecticut);

  c.  FLA. STAT. ANN. § 501.201 et seq. (Florida);

  d.  TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Texas).

153.    Plaintiffs and the Multi-State No Lapse Class members have standing to assert claims under the Consumer Protection Acts because they are consumers within the meaning of the Consumer Protection Acts and NY Life's practices were addressed to the market generally and otherwise implicate consumer protection concerns. At all relevant times, NY Life conducted "trade and commerce" within the meaning of the Consumer Protection Acts that was intended to result or did result in the sale of goods or services to consumers.

154.    NY Life committed unlawful, fraudulent, and/or unfair business acts and practices by engaging in the acts and practices alleged herein, including but not limited to issuing UL policies lacking no-lapse provisions to consumers in states that require no-lapse provisions.

155.    Numerous states have laws imposing non-forfeiture requirements on life insurance policies so that, after years of paying premiums, the insured is not left completely empty-handed simply because a policy has become cost-prohibitive. *See, e.g.*, Cal. Ins. Code § 10160 (California); Conn. Gen. Stat. §38a-439 (Connecticut); Fla. Stat. Ann. § 627.476 (Florida); Tex. Ins. Code § 1105.004 (Texas).

156.    Under these statutes, NY Life is supposed to sell policies with policy forms containing approved non-forfeiture protections, but it does not. The Illegal Form provided by NY Life to Plaintiffs, for example, does not comply with Connecticut's requirement that life insurance policy forms must include non-forfeiture provisions. As required under Connecticut law, the Legal Form that NY Life submitted to the Connecticut Insurance Department for approval contained a "Lifetime No Lapse Guarantee (NLG)" clause. But the Illegal Form provided by NY Life to Plaintiffs contains only a limited five-year lapse protection.

157.    Due to the unfair and unaffordable premium increases unilaterally imposed by NY Life, the Policy lapsed on January 19, 2019. After faithfully paying premiums for over a decade, Plaintiffs now have no cash value or life insurance remaining. NY Life has retained all of the benefits that were poured into the policy for the last fifteen years, and Plaintiffs are left with nothing.

158.    . Under the Legal Form, the Policy *should never have been allowed to lapse* without some form of restitution to Plaintiffs for the premiums paid over the years. By swapping in the Illegal Form, NY Life deprived Plaintiffs of non-forfeiture benefits.

159.    NY Life committed unlawful, fraudulent, and/or unfair business practices by utilizing UL policy forms that did not include required nonforfeiture provisions and permitting policyholders' policies to lapse.

160.    NY Life willfully violated the Consumer Protection Acts by misrepresenting the legality of the unapproved forms that do not include anti-forfeiture provisions, and holding them out as lawful and legal under state laws. NY Life misrepresented that the policies were legal under state law. NY Life misrepresented the protection to which policyholders, including Plaintiffs and the Class members, were entitled.

161.    As noted by the NYDFS in its 2011 and 2016 Reports, NY Life has engaged in the widespread illegal use of life insurance policy forms not approved by the state insurance agency where the policy was sold. This activity is believed to be a repeated and general business practice of NY Life in every state where it conducts business.

162.    NY Life's conduct is likely to mislead and has misled reasonable consumers acting reasonably under the circumstances.

163.    Had Plaintiffs and the Class members known at the time they paid premiums for their policies that the policies lacked required nonforfeiture provisions, they would not have paid those premiums or would have paid less money in premiums.

164.    NY Life's conduct is consumer-oriented and of a recurring nature. NY Life marketed and sold policies to the public at large pursuant to form insurance policies that are contracts of adhesion. NY Life engaged in a single course of conduct impacting consumers nationwide.

165.    As a direct and proximate cause of NY Life's violations of the consumer protection statutes, Plaintiffs and the Class have been damaged as alleged herein in an amount to be proven at trial.

166.    In addition to monetary damages, Plaintiff and the Class seek injunctive relief and reasonable attorneys' fees. Unless Defendant is preliminarily and permanently enjoined from continuing to deduct unlawfully increased monthly deduction charges, Plaintiffs and the Class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

**COUNT VIII**
**In the Alternative, Violation of the Connecticut Unfair Trade Practices Act**
**(On Behalf of Plaintiffs and the Connecticut No-Lapse Class)**
**Conn. Gen. Stat. § 42-110a et seq.**

167.    Plaintiffs reallege and incorporates all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

168.    The Connecticut Unfair Trade Practices Act ("CUTPA") prohibits the use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. *See* Conn. Gen. Stat. § 42-110g.

169.    CUTPA provides that "any person who suffers any ascertainable loss of money or property" as a result of the use of prohibited unfair and deceptive practices may recover damages, punitive damages, and equitable relief. Conn. Gen. Stat. § 42-110g(a). CUTPA further provides that persons entitled to bring an action under CUTPA may do so "on behalf of themselves and other persons similarly situated who are residents of this state or injured in this state." *Id.* § 42-110g(b).

170.    The acts and practices described herein and engaged in by NY Life constitute "unfair or deceptive acts or practices in the conduct of [a] trade or commerce" in violation of CUTPA. They offend the public policy of the State of Connecticut and the United States and are unethical, oppressive, and unscrupulous. They cause substantial injury to Connecticut consumers.

171.    Connecticut requires that insurance policies sold within the state contain a non-forfeiture provision so that, after years of paying premiums, the insured is not left completely empty-handed simply because a policy has become cost-prohibitive. *See* Conn. Gen. Stat. §38a-439.

172.    NY Life is supposed to sell policies with policy forms containing approved non-forfeiture protections, but it does not. The Illegal Form provided by NY Life to Plaintiffs, for example, does not comply with Connecticut's requirement that life insurance policy forms must include non-forfeiture provisions. As required under Connecticut law, the Legal Form that NY Life submitted to the Connecticut Insurance Department for approval contained a "Lifetime No Lapse Guarantee

(NLG)" clause. But the Illegal Form provided by NY Life to Plaintiffs contains only a limited five-year lapse protection.

173.    Due to the unfair and unaffordable premium increases unilaterally imposed by NY Life, the Policy lapsed on January 19, 2019. After faithfully paying premiums for over a decade, Plaintiffs now have no cash value or life insurance remaining. NY Life has retained all of the benefits that were poured into the policy for the last fifteen years, and Plaintiffs are left with nothing. Under the Legal Form, the Policy *should never have been allowed to lapse* without some form of restitution to Plaintiffs for the premiums paid over the years. By swapping in the Illegal Form, NY Life deprived Plaintiffs of non-forfeiture benefits.

174.    NY Life committed unlawful, fraudulent, and/or unfair business practices by utilizing UL policy forms that did not include required nonforfeiture provisions and permitting policyholders' policies to lapse.

175.    As noted by the NYDFS in its 2011 and 2016 Reports, NY Life has, in many instances, engaged in the illegal use of life insurance policy forms not approved by the state insurance agency where the policy was sold. This activity is believed to be a repeated and general business practice of NY Life in Connecticut and elsewhere.

176.    NY Life willfully violated CUTPA by misrepresenting the legality of the unapproved forms that do not include anti-forfeiture provisions, and holding them out as lawful and legal under state laws. NY Life misrepresented that the policies were legal under state law. NY Life misrepresented the protection to which policyholders, including Plaintiffs and the Class members, were entitled.

177.    NY Life's conduct is consumer-oriented and of a recurring nature. NY Life marketed and sold policies to the public at large pursuant to form insurance policies that are contracts of adhesion. NY Life engaged in a single course of conduct impacting consumers nationwide.

178.    NY Life's conduct is likely to mislead and has misled reasonable consumers acting reasonably under the circumstances.

179.    NY Life's policies and practices as alleged herein are "unfair" under CUTPA. In determining whether a practice violates CUTPA, Connecticut courts are guided by the criteria set out in the Federal Trade Commission's so-called cigarette rule: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." (Internal quotation marks omitted.) *Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 155, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S.Ct. 1913, 164 L.Ed.2d 664 (2006). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) *Id.*

180.    NY Life's practices alleged herein are immoral, unethical, oppressive, and unscrupulous and cause substantial injury to Connecticut consumers.

181.    Had Plaintiffs and the Class members known at the time they paid premiums for their policies that the policies lacked required nonforfeiture provisions, they would not have paid those premiums or would have paid less money in premiums.

182.    As a direct and proximate cause of NY Life's violations of the consumer protection statutes, Plaintiffs and the Class have been damaged as alleged herein in an amount to be proven at trial.

183.    In addition to monetary damages, Plaintiff and the Class seek injunctive relief and reasonable attorneys' fees. Unless Defendant is preliminarily and permanently enjoined from

continuing to deduct unlawfully increased monthly deduction charges, Plaintiffs and the Class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## COUNT IX
### In the Alternative, Violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") §38a-315 et seq.
### (On behalf of Plaintiff Axelrod and the Connecticut No Lapse Subclass)

184.     Plaintiffs reallege and incorporate all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

185.     Connecticut General Statute Sec. 38a-430 provides that no life insurance policy, nor any rider or endorsement used in connection therewith, shall be delivered or issued for delivery to any person in this state "until a copy of the form thereof shall have been filed with and approved by the commissioner." Conn. Gen. Stat. §38a-430.

186.     The form of universal life insurance NY Life purported to issue to Plaintiffs was never filed or approved by the commissioner for the Connecticut Insurance Department.

187.     The Legal Form that NY Life filed with the commissioner contained more favorable terms to Plaintiffs than the Illegal Form that it provided in November 2018.

188.     The Illegal Form contained a different, limited five-year no-lapse provision rather than the Legal Form, which provided insureds with a Lifetime No-Lapse Guarantee.

189.     The Illegal Form also contained a different COI rate table, significantly and materially increasing the cost of insurance and premium adjustments to Plaintiffs' financial detriment.

190.     NY Life's use of an unfiled and unapproved form subjected Plaintiffs to improperly high premiums, policy lapse and his loss of the accumulated cash value and death benefit under the policy. NY Life's orchestrated efforts improperly raised the cost of insurance to Plaintiffs to their financial detriment and improperly forced the policy to lapse.

191.     General Statute Sec. 38a-316 prohibits unfair methods of competition and deceptive and unfair trade practices in the insurance industry.

192.    Further, Sec. 38a-316(2) prohibits "[m]aking, publishing, disseminating, circulating or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated or placed before the public … in the form of a notice, circular, pamphlet, letter … or in any other way … an announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading."

193.    NY Life's provision of a universal life insurance form to Plaintiffs that was never filed or approved by the commissioner of the Connecticut Insurance Department, and acts thereupon unfairly raising his Cost of Insurance, constitute general violations of Conn. Gen. Stat. §38a-316, and are acts specifically prohibited by Conn. Gen. Stat. §38a-316(2). As noted by the NYDFS in its 2011 and 2016 Reports, NY Life has, in many instances, engaged in the illegal use of life insurance policy forms not approved by the state insurance agency where the policy was sold. This activity is believed to be a repeated and general business practice of NY Life in Connecticut and elsewhere.

194.    As a direct and proximate result of NY Life's violations of the CUIPA, Plaintiffs and the Class have been, and will continue to be, damaged in an amount to be proved at trial.

**COUNT X**
**In the Alternative, Violation of the California Unfair Competition Law**
**(On Behalf of Plaintiffs and the California No-Lapse Class)**
**Cal. Bus. & Prof. Code §§ 17200 et seq.**

195.    Plaintiffs reallege and incorporates all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

196.    NY Life's conduct described herein violates California's UCL. *See* Cal. Bus. & Prof. Code §§ 17200 et seq.

197.    The UCL prohibits and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for

goods and services. In service of that purpose, the California Legislature has framed the UCL's substantive provisions in broad, sweeping language.

198.    The UCL defines "unfair competition" to include "any unlawful . . . business act or practice." Accordingly, this provision encompasses acts and practices proscribed by any other law, and makes violations of those laws unfair competition that is independently actionable under the UCL.

199.    California requires that insurance policies sold within the state contain a non-forfeiture provision so that, after years of paying premiums, the insured is not left completely empty-handed simply because a policy has become cost-prohibitive. *See* Cal. Ins. Code § 10160.

200.    NY Life is supposed to sell policies with policy forms containing approved non-forfeiture protections, but it does not. The Illegal Form provided by NY Life to Plaintiffs, for example, does not comply with the requirement that life insurance policy forms must include non-forfeiture provisions. The Legal Form that NY Life submitted to the Connecticut Insurance Department for approval contained a "Lifetime No Lapse Guarantee (NLG)" clause. But the Illegal Form provided by NY Life to Plaintiffs contains only a limited five-year lapse protection.

201.    Due to the unfair and unaffordable premium increases unilaterally imposed by NY Life, the Policy lapsed on January 19, 2019. After faithfully paying premiums for over a decade, Plaintiffs now have no cash value or life insurance remaining. NY Life has retained all of the benefits that were poured into the policy for the last fifteen years, and Plaintiffs are left with nothing. Under the Legal Form, the Policy *should never have been allowed to lapse* without some form of restitution to Plaintiffs for the premiums paid over the years. By swapping in the Illegal Form, NY Life deprived Plaintiffs of non-forfeiture benefits.

202.    NY Life has violated the California Insurance Law by failing to include a required nonforfeiture provision in its UL policy. These actions are "unlawful" for purposes of the UCL's prohibition on unfair competition.

203.    NY Life's conduct was not motivated by any legitimate business or economic need or rationale. The harm and adverse impact of its conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motivations.

204.    NY Life's conduct as described herein was also unfair and fraudulent under the UCL. NY Life's conduct was likely to deceive, and did deceive, members of the general public. NY Life misrepresented the legality of the unapproved forms that do not include anti-forfeiture provisions, and holding them out as lawful and legal under state laws. NY Life misrepresented that the policies were legal under state law. NY Life misrepresented the protection to which policyholders, including Plaintiffs and the Class members, were entitled.

205.    As noted by the NYDFS in its 2011 and 2016 Reports, NY Life has, in many instances, engaged in the illegal use of life insurance policy forms not approved by the state insurance agency where the policy was sold. This activity is believed to be a repeated and general business practice of NY Life in Connecticut and elsewhere.

206.    Plaintiffs and the members of the Class relied on the deceptive and misleading forms provided by NY Life in allowing their policies to lapse, when in fact they were entitled to nonforfeiture protections under applicable state law. Plaintiffs and the members of the Class relied on the deceptive and misleading policy forms provided by NY Life in paying premiums for their policies even though those policies provided worse protection than that to which they were entitled under state law.

207.    NY Life's conduct was substantially injurious to consumers who were subjected to UL policies lacking required anti-forfeiture provisions, whose policies lapsed without any required retribution, or who paid premiums for inferior protection than that to which they were entitled under state law.

208.    As a result of NY Life's violations of the UCL, Plaintiffs and the members of the Class have paid and will continue to pay premiums for these unlawful policies and have suffered and will

continue to suffer actual damages. Plaintiffs and the members of the Class seek restitution of all funds acquired by means of the unlawful practices set forth herein.

209.    Plaintiffs additionally seek a judicial declaration that NY Life's conduct violates the UCL. Plaintiffs and the Class are entitled to and do seek an injunction enjoining NY Life from continuing to engage in the unlawful conduct alleged herein.

**COUNT XI**
**Breach of Contract and Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiffs and the Nationwide Impermissible Rate Increase Class)**

210.    Plaintiffs reallege and incorporates all allegations of this Complaint in paragraphs 1 to 92 as if fully set forth herein.

211.    The Policy and all policies held by Class members are binding and enforceable contracts. NY Life entered into these contracts with Plaintiffs and the Class members. When Plaintiffs and the Class members entered into their contracts with NY Life, they reasonably expected to receive the benefits of a UL life insurance policy approved by the relevant state agency.

212.    NY Life's COI rate increase and premium increase has materially breached the policies held by Plaintiff and the Class in several respects, including but not limited to:

a.    NY Life breached the policies by determining COI rates based on unreasonable assumptions; and

b.    NY Life breached the policies by determining COI rates based on factors not enumerated in the policies.

213.    Plaintiffs performed all of their obligations under the policies except to the extent that her obligations were excused by NY Life's conduct as set forth herein.

214.    In addition to breaching the express terms of the contract it has with Plaintiffs and the Class members, NY Life has breached the covenant of good faith and fair dealing by forcing massive and unexpected premium hikes upon Plaintiffs and the Class.

215.    Contractual covenants of good faith and fair dealing mean that NY Life owes Plaintiffs and the Class members a duty to act in a manner that did not frustrate their reasonable expectations under their UL policies.

216.    NY Life breached the covenant of good faith and fair dealing when it exploited the flexibility built into the Policy to justify imposing unaffordable and unfair rate hikes on policyholders like Plaintiffs who have dutifully and in good faith been paying their policy premiums for years. To the extent NY Life had discretion to increase the COI rate or minimum premiums due under UL policies, that discretion was sufficiently constrained under the terms of the policies in question to support an implied obligation of good faith and fair dealing with respect to cost of insurance charges and associated extraordinarily higher premiums.

217.    NY Life further breached the covenant of good faith and fair dealing by imposing unfair and burdensome premium increases that have caused policy holders to pay excessive COI rates or be forced into shock lapses.

218.    NY Life's breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiffs and the Class members in an amount to be determined at trial.

219.    Unless Defendant is preliminarily and permanently enjoined from continuing to deduct unlawfully increased monthly deduction charges, Plaintiffs and the Class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

220.    As a direct and proximate cause of NY Life's material breaches of the Policy and the policies of the Class members, Plaintiffs and the Class have been and will continue to be damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    Certifying this action to properly be a class action under Fed. R. Civ. P. 23;

2.      Awarding compensatory damages, restitution, disgorgement, and other monetary relief;

3.      Awarding pre- and post-judgment interest as permitted by law;

4.      Awarding injunctive relief enjoining NY Life from continuing to engage in the unlawful and unfair conduct described herein and preventing NY Life from collecting the unlawfully and unfairly increased COI amounts in violation of the policies and in violation of state law, and ordering reinstatement any policy that was surrendered or terminated as a result of the COI increase;

5.      Awarding Plaintiffs and the Classes injunctive relief enjoining NY Life from collecting premiums for insurance policies written on forms that were never fully filed and/or approved by Connecticut Insurance Department or similar state insurance agency in the relevant state;

6.      Awarding Plaintiffs and the Classes reformation of their insurance policies in compliance with the fully approved form NY Life filed with the Connecticut Insurance Department or similar state insurance agency;

7.      Awarding Plaintiffs and the Classes punitive damages arising from NY Life's reckless disregard for their rights;

8.      Awarding reasonable attorneys' fees and costs; and

9.      Awarding all such other relief as this Court may deem just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  March 8, 2019                    Respectfully submitted,

   /s/ Kevin W. Barrett
Kevin W. Barrett (NY Bar No. 2196343)
BAILEY & GLASSER LLP
137 Betsy Brown Road
Port Chester, New York 10573
Telephone:  (646) 776-8580
Facsimile:  (304) 342-1110
Email:  kbarrett@baileyglasser.com

Brian A. Glasser (*pro hac vice to be submitted*)
James L. Kauffman (*pro hac vice to be submitted*)
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
Email: bglasser@baileyglasser.com
jkauffman@baileyglasser.com

Hassan A. Zavareei (*pro hac vice* to be filed)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com